```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 10-80670-Civ-Ryskamp
                                  (08-80108-Cr-Ryskamp)
                          MAGISTRATE JUDGE P. A. WHITE
```

FAUSTO JAIMES-SANTIBANEZ,       :

    Movant,                     :
                                        REPORT OF
v.                              :   MAGISTRATE JUDGE

UNITED STATES OF AMERICA,       :

    Respondent.                 :
_____

## Introduction

This matter is before the Court on the movant's timely filed motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentence for being an illegal alien in possession of a firearm, illegal reentry after deportation, and making a false claim of United States citizenship, entered following a guilty plea in case number 08-80108-Cr-Ryskamp.

The Court has reviewed the motion (Cv-DE#1), the memorandum of law in support thereof (Cv-DE#4), the government's answer with exhibits (Cv-DE#9), the movant's reply (Cv-DE#10), the Pre-sentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## Claims Raised

Construing the movant's arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the

1

movant appears to raise the following claims in his §2255 motion:

1. The movant was denied effective assistance of counsel when his attorney:

    (a) failed to file a motion to suppress evidence (DE#1:5);

    (b) failed to object to the government's breach of the plea agreement (DE#1:5);

    (c) failed to challenge his enhancement pursuant to U.S.S.G. §2A2.1 (DE#1:5);

    (d) misadvised him about the sentence he would receive as a result of signing the plea agreement (DE#4:6).

## Factual History

During the change of plea hearing, the movant acknowledged the following factual proffer:

> On July 27, 2008, Jaimes and another individual drove to the home of Jesus Lopez in Lake Worth, Florida. Jaimes and Lopez had a dispute over Jaimes' to pay Lopez for some work that he had done. Jaimes and the other individual drove past Lopez's house several times shouting threats and profanity. When they drove past again, someone shot Lopez in the leg and drove away. Lopez was seriously injured and his girlfriend call[ed] 911.
>
> Lopez's girlfriend and another friend identified Jaimes, the defendant, as the shooter and they provided physical descriptions and a description of the vehicle Jaimes was

driving. Other witnesses in the neighborhood provided corroborating statements.

Lopez provided a dying declaration identifying the defendant as the shooter. Lopez later gave a statement saying that he could not identify the shooter.

Sheriff's deputies were able to find Jaimes based upon the information provided by the witnesses. They found him at one of his homes sitting on a stoop while two other men washed Jaimes' truck which matched the description of the truck used by him during the shooting. Jaimes tried to hide from view, but was arrested.

At the time Jaimes was wearing only shorts and his shirt was rolled up in a ball next to him. When he was arrested, deputies found a loaded semiautomatic .22 caliber Ruger handgun wrapped up in the shirt. The Ruger had one round in the chamber and eight in the magazine. A search of Jaimes' pockets revealed three additional rounds of .22 caliber ammunition.

After he was Mirandized, Jaimes told the deputies that he was born in Mexico but was a United States citizen. This was a false statement. Jaimes had never been a United States citizen. He remains a citizen of Mexico.

Jaimes denied being the shooter but admitted to possessing the weapon. Fingerprint and DNA checks on the firearm and ammunition are being conducted but have not yet been finalized. It has been confirmed that Lopez was shot with a .22 caliber firearm. An additional box of .22 caliber ammunition was found during the search of Jaimes' truck.

Jaimes was charged with aggravated battery with a firearm and carrying a concealed firearm. When federal agents learned of the arrest, they contacted ICE and placed an immigration detainer on Jaimes. The ICE agent obtained a certificate of nonexistence of record from the Department of Homeland Security along with Jaimes' A-file. A review of the file shows that Jaimes was previously deported on three occasions: April 18, 1994, April 22, 1999, and November 4, 2003. The fingerprints associated with those orders of deportation were compared with fingerprints taken from Jaimes when he was arrested on July 27, 2008, and they were determined to have come from the same individual.

> The photographs attached to the orders of deportation also match the defendant. The certificate of nonexistence of records establishes that neither the Attorney General nor the Secretary of the Department of Homeland Security expressly consented to Jaimes' reapplying for admission to the United States and, accordingly, the defendant was an alien illegally in the United States on July 27, 2008.
>
> The firearm and ammunition that were recovered in this case were examined by an expert in the interstate and foreign nexus of firearms and ammunition who determined that all of them moved in and affected interstate commerce by virtue of the fact that they were manufactured outside of Florida and were found in the State of Florida.

(Cv-DE#9,Ex.2:7-10).

## Procedural History

The procedural history of the underlying criminal case reveals that on September 11, 2008, the grand jury returned an Indictment charging the movant with being an illegal alien in possession of a firearm, in violation of 18 U.S.C. §922(g)(5)(A)(Count One); illegal reentry after deportation, in violation of 8 U.S.C. §1326(a) (Count Two); and falsely claiming to be a United States citizen, in violation of 18 U.S.C. §911 (Count Three). (Cr-DE#10).

Thereafter, on November 14, 2008, pursuant to a negotiated written plea agreement, the movant pleaded guilty to all three counts of the Indictment. (Cr-DEs#24,26). The movant acknowledged that the sentence would be imposed by the court after considering the advisory guideline sentence. (Cr-DE#9,Ex.3:2). The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. (Id.). The movant agreed that the court was required to consider the advisory

4

guideline sentence, but was not bound to impose such a sentence. (Id.). Rather, the court was permitted to tailor the ultimate sentence in light of other statutory concerns, and that the court could ultimately impose a more severe or less severe sentence than the advisory guideline sentence. (Id.). The movant understood that he faced a statutory maximum term of up to 10 years in prison. (Id.:2-3).

In exchange, the government agreed to forego filing an indictment charging the movant with any other violations of Title 18 and Title 21 of the United States Code relating to conduct known to the United States at the time of the entry of the movant's guilty plea. (Cv-DE#9,Ex.3:2).

A PSI was then prepared in anticipation of sentencing wherein the probation officer determined the movant's base offense level was 14. (PSI¶16). However, because he used or possessed a firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense, his base offense level was increased by four levels. (PSI¶17). Because the movant clearly demonstrated acceptance of responsibility for his offense, his base offense level was reduced by three levels. (PSI¶¶23-24). Ultimately, his base offense level was set at 15. (PSI¶25). The probation officer further determined the movant had one criminal history point and a criminal history category of I. (PSI¶33). Based on a total offense level of 15 and a criminal history category of I, his guideline imprisonment range was 18 to 24 months. (PSI¶62).

On March 20, 2009, the district court sentenced the movant to a total of 87 months imprisonment, followed by 3 years of supervised release and $300 total assessment. (Cr-DEs#45,48). The

Clerk entered judgment on March 23, 2009. (Cr-DE#48). A timely notice of appeal was filed. (Cr-DE#49).

On appeal, the movant argued whether the sentencing court enhanced his sentence based on a finding that he aided and abetted an attempted murder, when the evidence only established an aggravated assault, not an attempted murder. (Cv-DE#9,Ex.4:2). On October 19, 2009, the Eleventh Circuit affirmed the district court's upward departure based on its findings that the movant aided and abetted an attempted murder. (Cr-DE#61).

A petition for writ of certiorari was not filed. For purposes of the federal, AEDPA one-year limitations period, the movant's conviction became final at the latest on January 19, 2010, ninety days following affirmance of the movant's sentence on direct appeal, when time expired for seeking certiorari review with the Supreme Court.[1] Thus, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than January 19, 2011. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). This motion to vacate was timely filed on May 31, 2010. (Cv-DE#4:10).[2]

---

[1] For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11th Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11th Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

[2] See Adams v. U.S., 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Although, the movant, in his form motion to vacate, failed to date and sign the document, it is evident he timely filed his motion to vacate. First, at the time of this report and recommendation, his one year limitations period has yet to elapse. Second, a review of the docket shows that the court received his motion to vacate and the accompanying memorandum of law on the

<u>Waiver of Claims</u>

The movant's complaints as to counsel's representation were waived by his knowing and voluntary guilty plea. The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. <u>See</u> <u>Smith v. United States</u>, 447 F.2d 487, 488 (5th Cir. 1971), <u>citing</u>, <u>Hayes v. Smith</u>, 447 F.2d 488 (5th Cir. 1971); <u>see also</u>, <u>Wilson v. United States</u>, 962 F.2d 966 (11th Cir. 1992); <u>United States v. Broce</u>, 488 U.S. 563 (1989); <u>United States v. Glinsey</u>, 209 F.3d 386, 392 (5th Cir. 2000), <u>citing</u>, <u>United States v. Smallwood</u>, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." <u>Id.</u> To enter into a voluntary plea, the defendant must understand the law in relation to the facts. <u>McCarthy v. United States</u>, 394 U.S. 459 (1969).

In this case, review of the record confirms that the movant's plea was knowing and voluntary. To ensure that a plea is voluntary and knowing, <u>Fed.R.Cr.P.</u> 11(b)(1) states that "the court must address the defendant personally in open court before accepting the

---

same date. The memorandum's certificate of service reflects it was sent on May 31, 2010, which is corresponds with the court's receipt thereof on June 2, 2010.

With respect to the movant's failure to sign his motion to vacate, a review of the criminal court docket shows, following the court's order requiring him to verify his motion to vacate (Cv-DE#5), he subsequently filed the same exact motion to vacate, but this time verified. (Cr-DE#64). As such, any argument regarding his failure to verify his petition is moot.

plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cv-DE#9,Ex.2-Transcript Change of Plea). At that time, the movant acknowledged

8

under oath[3] that he was satisfied with counsel's representation, and that he had discussed the indictment and the nature of the charges and the case in general with counsel prior to the change of plea. (Id.:3). The court advised and the movant acknowledged understanding the nature of the charges, and the potential consequences of entering a guilty plea. (Id.:4-5). The movant also denied being forced, threatened or coerced into changing his plea. (Id.:3-4). The movant further denied that any promises, other than those contained in the written plea agreement, had been made to induce him to plead guilty. (Id.:4). Finally, the movant confirmed knowing that by entering into the plea he was waiving his constitutional rights to a jury trial and to confront and present witnesses. (Id.:6-7).

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charge rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary.

Thus, by entering into a knowing and voluntary plea, the movant waived all nonjurisdictional defects and defenses. He is therefore barred from pursing these claims. Under these circumstances, no showing has been made that counsel was deficient or

---

[3] The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible. Machibroda v. United States, 368 U.S. 487 (1962).

that the movant suffered prejudice therefrom. See Strickland, supra. Consequently, the movant's generalized allegations in this collateral proceeding are clearly refuted by the record. The plea was valid and entered knowingly and voluntarily after a thorough Rule 11 proceeding. Thus, for the reasons previously expressed in this Report, the movant is not entitled to relief on these claims.

## Discussion of Claims

As will be demonstrated in more detail infra, the movant is not entitled to vacatur on any of the claims presented.[4] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally fair trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not

---

[4]Briefly, the evidence against the movant was more than sufficient to support his conviction. The movant has not shown that the result of the underlying criminal proceedings would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to Strickland has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the movant received fair criminal proceedings, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Here, the movant challenges counsel's effectiveness for several reasons. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993); United States v. Bartholomew, 974 F.2d 39, 42 (5th Cir. 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. Id. at 697. However, a movant must establish that the sentence was increased due to counsel's deficient performance. Glover v. United States, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Construing the arguments raised by the movant in this §2255 motion with supporting affidavit (Cv-DE#1), the movant appears to argue that, but for counsel's ineffectiveness and coercive tactics, he would not have pled guilty, and instead would have proceeded to trial.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11th Cir. 1994).

Finally, although the sentencing process may be reviewed by the district court on a §2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984); see also, Nelson v. United States, 709 F.2d 39, 40 (11th Cir. 1983)(citing, United States v. Diaz, 662 F.2d 713, 719 (11th Cir. 1981); United States v. Becker, 569 F.2d 951, 965 (5th Cir.), cert. denied, 439 U.S. 865 (1978), United States v. White, 524 F.2d 1249, 1254 (5th Cir. 1975), cert. denied,

426 U.S. 922 (1976).); See also Williams v. Alabama, 403 F.2d 1019, 1020 (5th Cir. 1968)(§2254 habeas case)(sentence within statutory limit is generally not subject to constitutional attack); Castle v. United States, 399 F.2d 642, 652 (5th Cir.1968) (§2255 case)(sentence within statutory limit is not reviewable on appeal and does not amount to a constitutional violation). These former Fifth Circuit decisions are controlling authority in this circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

In **claim one(a)**, the movant asserts he was denied effective assistance of counsel when his attorney failed to file a motion to suppress evidence. (DE#1:5).

These arguments were waived due to the entry of a knowing and voluntary guilty plea. The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." Id. To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969).

13

As previously narrated in this Report, the movant's plea was knowing and voluntary. By entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses that he may be entitled to as it relates to his case. He is therefore barred from pursuing this claim here.

In **claim one(b)**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the government's breach of the plea agreement (DE#1:5).

As previously discussed, the only promise the government made in exchange for the movant's guilty plea, was as follows:

> The United States agrees that, in exchange for the defendant's guilty plea, **it will forego filing an indictment** charging the defendant with any other violations of Title 18 or Title 21 of the United States Code relating to conduct known to the United States at the time of the entry of the defendant's guilty plea.

(Cv-DE#9,Ex.3:2)(emphasis added). Aside from the foregoing, the plea agreement is devoid of any other promise made on the government's behalf.

A review of the underlying criminal docket reveals that the government did not file a superseding indictment; thus not breaching the terms of the agreement. Under these circumstances, no deficient performance or prejudice has been established under <u>Strickland</u> and the movant is therefore entitled to no relief on this claim.

In **claim one(c)**, the movant asserts he was denied effective

14

assistance of counsel when his attorney failed to challenge his enhancement pursuant to U.S.S.G. §2A2.1. (DE#1:5).

Notwithstanding the movant's protestations, counsel did in fact vehemently object to the application of the enhancement at the sentencing hearing and on appeal. (Cv-DE#9,Ex.1:63-72; Exs.4,5).

A review of the sentencing hearing transcript reveals defense counsel proffered numerous arguments regarding the movant's upward departure. Counsel first argued that the original PSI was devoid of any factors that may have warranted an upward departure. (Cv-DE#9,Ex.1:64). Therefore, because there was no reason for an upward departure then, there is no reason for an upward departure after the PSI was revised since the facts of the case remained unchanged. (Id.).

Counsel then reminded the court of the government's promise as set forth in the plea agreement, wherein it would forego filing an indictment charging the movant with any other violations of Title 18 or Title 21 of the United States Code relating to conduct known to the United States at the time of the entry of the defendant's guilty plea. (Cv-DE#9,Ex.1:65-66). According to counsel, for the government to seek a departure from a guideline range of 18 to 24 months to one consisting of 87 to 108 months was disingenuous when it nonetheless used those same violations of law, violations they promised they would not use as the basis of a superseding indictment, to support an upward departure. (Id.).

Moreover, counsel argued that throughout the entire criminal proceedings, the movant maintained he was not the shooter, although he was present during the offense. (Cv-DE#9,Ex.1:66). Likewise, she argued that the victim of the shooting was not innocent himself,

since at the time, the victim stated "I'm going to kill you," while swinging a machete at the truck. (Id.:67).

Moreover, counsel argued that the victim's girlfriend and his neighbor lied to the police about whether they saw the actual shooting, where it occurred and if it even occurred. (Cv-DE#9,Ex.1:68). In response to the court's question that the movant lied about his citizenship, counsel in his defense stated that the movant only lied in the past to remain with his family in the United States. (Id.). From there, counsel informed the court if the movant were deported, his family planned on moving back with him to Mexico, that the movant will never reenter the United States and that he has learned his lesson. (Id.:69).

Counsel also argued that the movant's prior record was not under represented. (Cv-DE#9,Ex.1:69-71). In support of her argument, counsel distinguished the two cases relied upon by the government for their motion for upward departure. (Id.:71). For all of the foregoing reasons, counsel insistently asked the court not to depart upward from the 18 to 24 months guideline. (Id.:72).

Moreover, unlike the movant's assertions, appellate counsel was not ineffective, when on appeal, counsel argued that the sentencing court incorrectly sentenced the movant based on a finding that he aided and abetted an attempted murder, when the evidence only established an aggravated assault, not an attempted murder. (Cv-DE#9,Ex.4:2).

Notwithstanding, despite counsel's objections during the sentencing hearing and appellate counsel's argument on appeal, the Eleventh Circuit disagreed and ultimately found the upward departure was properly applied. (Cv-DE#9,Ex.5). Under these

circumstances, no deficient performance or prejudice has been established under Strickland and the movant is therefore entitled to no relief on this claim.

In **claim one(d)**, the movant asserts he was denied effective assistance of counsel when his attorney misadvised him about the sentence he would receive by signing the plea agreement. (DE#4:6).

This claim is patently frivolous, refuted by the record, and completely self-serving. Even if the movant had been misadvised by counsel, any such misadvice was cured by the court's thorough Rule 11 proceeding. At that time, the movant was advised that he faced 10 years in prison. Notwithstanding, he indicated that he was knowingly and voluntarily changing his plea to guilty. There is nothing of record to suggest that he was coerced, misadvised, or otherwise forced to change his plea. Consequently, he has failed to establish either deficient performance or prejudice pursuant to Strickland and is thus entitled to no relief on this claim.

## Evidentiary Hearing

The movant's request for an evidentiary hearing with respect to the foregoing claims should be denied. (DE#4:9). A hearing is not required on patently frivolous claims or those which are based upon unsupported, generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that the motion to vacate be denied and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 4th day of January, 2011.

                                    UNITED STATES MAGISTRATE JUDGE

cc: Fausto Jaimes-Santibanez, <u>Pro Se</u>
    Reg. No.#49675-080
    USP - Beaumont
    P.O. Box 26030
    Beaumont, TX 26030

    Anne Ruth Schltz, AUSA
    United States Attorney's Office
    99 NE 4 Street
    Miami, FL 33132
    Phone: 305-961-9117
    Fax: 305-530-7941

    Ann Marie C. Villafana, AUSA
    United States Attorney's Office
    500 South Australian Avenue
    Suite 400
    West Palm Beach, FL 33401
    Phone: 561-820-8711
    Fax: 561-820-8777